ÉTIENNE CARRABY *v.* NOEL BARTHELEMY LE BRETON, Curator.

The prayer of the petition determines the character of the action.

Where the petition makes it necessary to inquire into the title of the plaintiff, and to determine its validity, the action is a petitory one; and he must make out his title before the defendant can be disturbed.

ACTION before the Parish Court for the parish of New Orleans. The plaintiff alleges in his petition, filed in December, 1834, that he is the owner of certain lots of ground in the *faubourg* St. Mary, in the city of New Orleans; that some years before, when Jean Gravier was turned out of his residence by a sheriff's sale, he had given him permission to occupy an old wooden house standing on the above mentioned ground, in which he was allowed to reside until his death, in October, 1834, shortly after which the defendant was appointed curator of his succession. The petition further states that the said curator has caused the ground claimed by plaintiff to be put in the inventory of Gravier's property, and is about to cause it to be sold as such by the Register of Wills; and concludes with a prayer that the defendant 'may be decreed to restore the premises to the possession of the petitioner; to pay him rent therefor from judicial demand, till the delivery thereof; that, in the meantime, he be enjoined from selling or alienating the same; that the petitioner be decreed to be the lawful owner thereof; that the injunction be made perpetual; and for general relief.'

On a rule taken by the defendant, the injunction which had

been granted, was dissolved, on the grounds that the action was a petitory one, and that the plaintiff had not annexed any title to his petition in support of his allegation of ownership, as required by art. 174 of the Code of Practice, nor even alleged the existence of any such title. A supplemental petition was then filed, in which the plaintiff averred, 'that he was the owner of the property in contest, having acquired it from the late Antoine Carraby, by a deed of sale executed before a notary, on the 12th of May, 1828; that Antoine and Pierre Carraby, since deceased, purchased the property of Joseph, François, and Louis Bourgeois, by a deed of sale executed before a notary, on the 17th of March, 1818, of both which instruments authentic copies were annexed to the petition; that at the death of Pierre Carraby, Antoine Carraby became the sole owner of the premises under a compromise with the heirs of Pierre Carraby, executed before a notary, on the 29th July, 1826, and duly homologated by the Court of Probates; and that the Bourgeois acquired the property by purchase from Jean Gravier, by an act *sous seign privé*, of the 17th of November, 1812, recorded and deposited in the office of a notary, on the 18th of March, 1815, certified copies whereof are annexed to the petition.' It concluded with a prayer 'that a new injunction might be issued, restraining the defendant from selling or alienating the property in dispute, that it be made perpetual, and the plaintiff be declared the owner of the said property, and for general relief.'

The defendant's answer denied all the allegations of the plaintiff, except such as were specially admitted by him. It admitted that Gravier sold the lots mentioned in the petition to the Bourgeois, by an act, dated the 17th of November, 1812, and recorded in the office of a notary, the 17th of March, 1815, for a certain sum, the latter binding themselves to pay interest after maturity, on any part which should remain unpaid. That Gravier transferred this claim against the Bourgeois to Pierre and Antoine Carraby, by an act dated the 17th of April, 1814, and recorded in the office of a notary, the 18th of March, 1815. It averred that this transfer though apparently for a valuable consideration, was simulated, and devised for the purpose of placing the said claim beyond the reach of Gravier's creditors, and as collateral security to P. and A. Carraby for advances made to Gravier from time to time, on usu-

rious interest. That the Bourgeois having paid no part of the price, and wishing to be released from their purchase, proposed to Gravier to rescind the sale, to which he acceded; directing them to execute an act of sale of the lots to P. and A. Carraby; which was done by notarial act, on the 17th of March, 1818. That it was understood between Gravier and P. and A. Carraby, that the sale thus executed to them, was for the benefit of Gravier, and intended to effect the object contemplated by the transfer of Gravier's claim for the price of the lots to P. and A. Carraby, which was to place the property beyond the reach of Gravier's creditors, and to secure the Carrabys for their advances. That the latter had, for many years, large dealings with Gravier, similar to the transaction just mentioned, receiving simulated sales of property from him for the purpose of secreting it from his creditors, and for securing the repayment of advances made by them from time to time, with usurious interest. That the plaintiff, Etienne Carraby, was a party to many, and cognizant of all the said transactions, and well aware that Gravier was the real owner of the lots in dispute. That subsequently to 1824, in which year Gravier became absolutely insolvent, and as soon as the said Pierre and Antoine Carraby had discovered that he would never be able to redeem the property pledged to them for their advances, and for which they had simulated sales, they sold, for their own benefit, all except the lots in contest; which last they did not venture to dispose of from the fear of exciting the displeasure of Gravier, who had resided on them since the year 1823, and who might, in case of their being sold, have been led to take measures against the Carrabys to bring them to account for the illegal sales previously made by them. That Antoine, who had acquired all the rights of Pierre Carraby, when about leaving the state, made a simulated sale of the said lots, on the 12th of May, 1828, to the plaintiff, to enable the latter to make the best use of Antoine's pretended title, which circumstances might render practicable, without disturbing Gravier in his possession. The answer further alleges that neither Pierre nor Antoine Carraby, nor the plaintiff, has ever been in possession of the premises; that Gravier resided thereon, and had exclusive possession thereof from 1823 to the time of his death in 1834, and that he possessed them by himself, or his tenants, ever since they were

abandoned by the Bourgeois, and that the Carrabys, notwithstanding their pretended title, never claimed any rent therefor. It concludes with a prayer, that the ground may be declared to be the property of Gravier.

A second supplemental petition was filed, citing the curator of the estate of Antoine Carraby, the plaintiff's vendor, in warranty. The latter, in his answer, prayed that Louis Bourgeois, the only one of his vendors still living within the jurisdiction of the court, might be called in warranty to defend his title. Bourgeois averred 'that he acquired the property from Gravier, and that the defendant, his curator, is bound to warrant him against eviction.

The jury summoned for the trial of this case was discharged by consent, and the case was argued before the court alone, *Maurian*, J. The evidence established the fact of the sale by Gravier to the Bourgeois, on the terms and for the purposes stated in the answer of the defendant; the rescission of that sale; the subsequent transfer to Pierre and Antoine Carraby; the transactions between the latter and Gravier; the simulated sales for the purpose of securing their advances, and, in all probability, for the protection of the property from the creditors of Gravier. It was proved that these transactions took place between 1812 and 1824, during which period there were several settlements between the parties, in the last of which, on the 27th of December, 1823, Gravier, by an act *sous seign privé*, acknowledged himself indebted to Pierre and Antoine Carraby, in a balance of $13,277, for which he gave his note at one year, to bear interest at ten per cent a year from maturity if not punctually paid; that on the same instrument, the latter acknowledged that they held in their names the titles to eight tracts of land or other property worth about $30,000, really belonging to Gravier, but held by them to secure the payment of the note of the latter for $13,277, and interest, and costs in case of non-payment. The property now in contest, is mentioned as a part of that which P. and A. Carraby so held as security. In this act of settlement it was further agreed, that in case Gravier should not pay the note just mentioned, P. and A. Carraby should cause to be sold at public auction, after thirty days advertisement in two of the news-papers of this city, the property above mentioned, or

such part thereof as they might deem proper to sell, in order to pay themselves the amount of the note, with costs, &c.

It was proved that on the 2d of October, 1824, more than two months before the maturity of the note of $13,277, one of the pieces of property, the title to which was in P. and A. Carraby, having been seized and advertised by a creditor of Gravier, and the Carrabys having expressed their dissatisfaction, Gravier wrote them a letter, in which he ' authorizes them to dispose of the property mentioned in the agreement of the 27th of December preceding; to make such improvements thereon as they might think fit; to lease it, or even to sell it, his only desire being to terminate his business with them to their entire satisfaction.' In another letter, written the following day, the 3d of October, 1824, he accepts a proposition of their's, to take on their own account, at a certain price, two of the pieces of ground mentioned in the act of the 27th of December, 1823, merely requesting them, as the property is in their name, to give him a credit for the amount. There was no evidence of any dealings between Gravier and P. and A. Carraby subsequent to this period.

It was proved·that the present plaintiff, Etienne Carraby, was acqainted with all the transactions between Pierre and Antoine Carraby and Gravier; that he knew under what circumstances the title to the property in contest was in the name of P. and A. Carraby; and that the act of the 27th of December, 1823, was in his hand writing. It was also established, that Gravier had inhabited and exclusively occupied the ground in dispute, from 1823 till his death in 1834 ; and that from the time of its relinquishment by the Bourgeois in 1818, Gravier had possessed it, either himself or by his tenants ; that no rent was ever claimed by the Carrabys; and that during his possession Gravier exercised on the premises evident acts of ownership.

The judge of the Parish Court, after recapitulating the facts of the case, delivered the following opinion :

" The principal facts of the case having been established, it remains for the court to examine the principles of law applicable to them.

" 1. What was the nature of the contract of the 27th of December, 1823, between Gravier and Pierre and Antoine Carraby ?  It

has been contended by the plaintiff's counsel, that it wanted one of the essential requisites of an *antichresis*, and I concur in that opinion; but it resembles that species of contract more than any other. It may, perhaps, be properly classed among the *pignorative* contracts. But whatever name we give to the contract, it was evidently the intention of the parties that the property of Gravier, the title to which was in P. and A. Carraby, should remain as security for Gravier's debt. That it was never contemplated that, in default of payment, they should become the owners of the property, is evident from the stipulation, that in case of the non-payment of Gravier's note at maturity, so much of the property as might be necessary should be sold; *at public auction, after thirty days notice, in two newspapers.*

" If the contract were an *antichresis*, Pierre and Antoine Carraby would have had no right to appropriate to themselves the pledge without complying with certain formalities, without which such appropriation would have been null. Code of 1808, p. 449, arts. 12, 15. Ib., p. 451, art. 25. Civ. Code, arts. 3132, 3135, 3148; and I cannot see upon what principle they can claim such a right under this contract. Even in case of a pledge, with an agreement that should the pledgor not redeem the thing pledged at the time fixed, the pledgee may sell the same in the manner stipulated in the agreement, the latter will be bound to notify the pledgor before doing so, and after such notice only will he be enabled to sell the thing pledged, and then only at public auction, in good faith, and without fraud, 2 Moreau & Carleton's Partidas, 890; and where these formalities have not been complied with, the owner may even claim the thing from a purchaser. 2 Ib., 896. In the case before us, there was a stipulation that if a sale took place, it should be at auction, after thirty days notice, in two newspapers.

" 2. Was the contract of the 27th of December, 1823, varied or changed by Gravier's letter of the 23d of October, 1824? I think not. It is impossible to believe that the contents of that letter were to annihilate the only guarantee which Gravier had reserved to himself by the act of the 27th of December, 1823. There is nothing in that letter from which it can be inferred, that he intended to dispense with the sale by auction and the advertisements. But sup-

pose that such an inference could be drawn: it is clear that the property in dispute never was sold by Pierre and Antoine Carraby, who merely took it as their own, for it was subsequently found among the property of the partnership of Pierre and Antoine Carraby; and the title of Antoine Carraby, the plaintiff's vendor, is based alone upon his acquisition of Pierre Carraby's interest after the death of the latter, and on his own interest in their partnership.

" If any doubt could remain on the subject, it would be cleared up by Gravier's letter to Pierre and Antoine Carraby, of the 3d of October, 1824, which is, in fact, nothing more or less than a real sale of two of the pieces of property in question. Again, it is proved that all the property mentioned in the act of the 27th of December, 1823, except the premises now in dispute, was sold several years afterwards, and at public auction.

" 3. If the property in dispute could not be considered, as before stated, to belong to Pierre and Antoine Carraby, it continued to be the property of Gravier. But had the former, who were the ostensible owners, having an authentic act in their name, sold to an innocent third person, there can be no doubt that the claim of the defendant would have been barred. Is the present plaintiff in the situation of an innocent third person ?

" 1 think not. The full knowledge which he had of all the transactions between his brothers, Pierre and Antoine Carraby and Gravier, and the share which he had himself in those transactions, preclude such an idea. He was evidently acquainted with the nature, and consequently with the defects of the title.

" 4. The act of sale from Antoine to Etienne Carraby, the plaintiff, though passed before a notary, is signed only by one witness, and has not, consequently, the character of an authentic act. It is no doubt good as an act under private signature, but has no effect against third persons; and with regard to Antoine Carraby and the plaintiff, the defendant is a third person. Civ. Code, art. 2417.

" 5. The act of sale just mentioned, though passed since the act of the 20th of March, 1827, has not been registered; and has therefore no effect against third persons. 2 Moreau's Dig., 303, sec. 5.

" 6. The defendant avers in his answer, that the sale from An-

toine Carraby to the plaintiff was a simulated one, and that the possession of the premises has never been in the latter; but that, on the contrary, as well before as after the said sale, it continued in Gravier. He alleges that the plaintiff is bound to destroy the legal presumption of simulation created by this circumstance; which he has failed to do. Civ. Code, arts. 1915, 3419.

" From the preceding statement, and from my view of the law applicable to the case, it follows, that the plaintiff, Etienne Carraby, is not the lawful owner of the premises claimed by him, and that the same never ceased to be the property of the late Jean Gravier, and now belongs to his succession, administered by N. B. Le Breton, the defendant. With regard to the successive calls in warranty, I consider that they must be dismissed. Etienne Carraby, the plaintiff, purchased the property in question from Antoine Carraby, with no other warranty than against the latter's personal acts; and being, as before stated, fully aware of all the circumstances connected with the title, and having been a party to all the transactions, he cannot, in my opinion, look to his vendor for warranty."

There was judgment in favor of the defendant, dismissing the petition, dissolving the injunction, and declaring the premises to belong to the succession of the late Jean Gravier. The plaintiff appealed.

Joseph Dumas, the dative testamentary executor of Antoine Carraby, and Louis Bourgeois, who had been cited in warranty, filed exceptions, in the appellate court, to the reconventional demand of the defendant, averring that it cannot be maintained, on the ground that the contracts on which it was founded were illegal, immoral, and contrary to public policy.

*D. Seghers,* for the plaintiffs and warrantors. The demand in reconvention cannot be listened to, being founded on an allegation of the respondent's own turpitude, and supported by contracts immoral, and contrary to public policy. *Allegans turpitudinem suam non est audiendus.*

*Denis,* and *Janin,* for the defendant. 1. The condition annexed to the contract, enabling the creditor to retain the property as his own, or to sell it, on the non-payment of the debt it was intended to secure, is illegal and void. 2 Tapia, 469. 16 Duranton, 444–5. Even by the regular contract of pledge, which is more favorable to

the creditor than the one under consideration, inasmuch as he has the possession of the property, such property can be disposed of only by judicial authority; Code of 1808, arts. 12 and 15, p. 448, and art. 25, p. 450.; Civ. Code, arts. 3132, 3135, 3146; and any agreement to the contrary is void. Under the old Spanish law, where an agreement was entered into authorizing the creditor to sell the property pledged if the debt was not paid, the sale was only valid, when made after notice and public advertisement. Partida, 5, tit. 13, law 41. 2 Moreau & Carleton's Partidas, 890. And where the property has been sold without these formalities, the debtor may recover it back. Ib., law 48, p. 896. The private sale of the property would therefore have been null, even had the agreement of the 27th of December, 1823, not expressly required thirty days advertisement.

2. The agreement of the 27th of December, 1823, was not altered by Gravier's letter of the 2d of October, 1824. The latter authorized the Carrabys to dispose of the property before the term stipulated in the contract, but not in a different manner. The intention of the parties is still further shown by the letter of the 3d of October, 1824.

3. Etienne Carraby, the plaintiff, is in the same situation as his brothers, Pierre and Antoine. He knew the character of their dealings with Gravier; and the agreement of the 27th of December, 1823, is in his writing.

4. The sale to the plaintiff, though purporting to have been executed before a notary and two witnesses, was signed by only one witness. It is a sale *sous seign privé*, which being neither recorded, nor followed by delivery, does not affect third persons. Civ. Code, arts. 2242, 2250, 2417. *De Flechier's Syndics v. Degruys,* 5 Martin, N. S., 423. And constructive delivery does not follow even an authentic act, where the property is in the hands of a third person. *Emerson et al. v. Fox et al.,* 3 La., 183.

5. The sale to the plaintiff, though subsequent to the creation of the office of the Register of conveyances, was not recorded there; which alone avoids it as to third persons. 1 Bullard & Curry's Digest, 603, sec. 82. *Carraby v. Desmare,* 7 Martin, N. S., 663. *Gravier v. Baron,* 4 La., 239.

6. The answer alleges that the sale from Antoine Carraby to

the plaintiff was simulated ; and that as Gravier always remained in possession of the property, simulation must be presumed. Civ. Code, arts. 1915, 2456. *Monday* v. *Wilson*, 4 La., 340. The articles of the Code, above cited, place the burthen of proving the reality of the transaction, upon the party claiming under a sale not accompanied by possession. 8 Martin, N. S., 461. 3 La., 74. In this case no attempt has been made to offer such proof.

7. The evidence offered to show that Gravier denied or concealed his property, was received subject to all legal exceptions. The defendant objects to any parol proof of Gravier's acquiescence in any claim set up to his real property. *Nichol* v. *De Ende*, 3 Martin, N. S., 312.

8. Etienne Carraby, the plaintiff, has no better right than Antoine Carraby had. The illegality of the contracts between the Carrabys and Gravier was determined in the case of *Gravier's Curator* v. *Carraby's Executor*, 17 La. 132; and the principle on which that case was decided is equally applicable to the present, *In pari causa turpitudinis potior est causa possidentis.* The justice of the case is with the defendant,

9. This is not an action of jactitation. See the prayer of the original and supplemental petitions. The action of jactitation can only be instituted by the party in possession.

BULLARD, J. The first question which is presented for our solution in this case is, what is the nature of the action; is it petitory, or possessory ? By the plaintiff's counsel it is contended, that the proceeding is for the sole purpose of turning out of possession the tenant at will, whose possession was that of his lessor, 'or at most, an action in jactitation in which the defendant, who avers title in his intestate by way of reconventional demand, becomes *actor* and is bound to make out his title. The defendant, on the other hand, insists that the action is petitory, and that he is to be maintained in his possession, until the plaintiff shall have shown a better right.

It is the prayer of the petition, which gives character to the action. The plaintiff, after setting forth the fact of his ownership of the property, and that Jean Gravier had been permitted to occupy an old wooden house on the land until his death, and that the defendant, the curator of his estate, well knowing the premises, had caused the lot to be inventoried as a part of his estate, and had

refused to give up possession and surrender the key of the house. concludes by praying that the defendant may be condemned to restore the premises to the plaintiff's possession, and to pay rent at the rate of fifty dollars per month *from judicial demand;* that he be enjoined from selling or alienating the property; and that the petitioner *may be decreed to be the lawful owner* thereof; and the injunction be made perpetual; and for general relief.

It is manifestly impossible for the court to grant the prayer of this petition, and decree the property in dispute to belong to the plaintiff, without looking into his title, and deciding whether it be a valid one; and that is what we regard as of the essence of a petitory action. The plaintiff is therefore bound, in our opinion, to make out his title, before the defendant can be disturbed. It was in this light that the case was regarded in the court of the first instance. The respective titles of the parties were investigated, evidence offered and received without exception, and the court pronounced as upon a petitory action; and the judgment being for the defendant, the plaintiff appealed.

The case appears to be a part of the same tissue of usurious and illicit transactions, which were disclosed to our view in the case of *Gravier's Curator v. Carraby's Executor,* upon which we pronounced as our deliberate judgment, that the law did not authorize us to come to the relief of the parties against each other, and that *in pari delicto potior est conditio possidentis.* That the lot was originally the property of Gravier, is unquestionable. It only remains to inquire, whether he has ever been divested of it.

Whatever may have been the true character of the first sale from Gravier to the Bourgeois, it appears certain that the conveyance by the latter to Pierre and Antoine Carraby, was in substance a retrocession to Gravier, the Carrabys being regarded as merely persons interposed. This is satisfactorily shown by the fact that long subsequently, this property is enumerated as a part of that which the Carrabys held *en nantissement,* or as collateral security for advances made to Gravier by them, and which they were authorized by agreement in 1823, to sell in order to reimburse their advances.

Such being then the acknowledged condition of the parties in reference to the lot in dispute, it is clear that whether we look upon

the contract as one of mortgage, or of antichresis, the property could never have been vested in P. and A. Carraby without a sale, or at least some subsequent agreement between the parties. Code 1808, p. 449, art. 12, 15.

The evidence fully satisfies us that the present plaintiff, who purchased in 1828, was fully cognizant of the nature of the contracts between Jean Gravier and P. and A. Carraby, and that consequently, he must be regarded as identified with the latter, and as having acquired no better title than they had; and we concur fully in the able and lucid opinion pronounced by the Parish Court, being satisfied that the title of Jean Gravier never was legally divested, and that the property in controversy still belongs to his succession.

*Judgment affirmed.*